FILED ___ ENTERED
___ LODGED ___ RECEIVED

SEP 21 2022

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

Hon. Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JASON STANLEY,<br><br>Defendant. | NO. CR20-222-RAJ<br><br>**PLEA AGREEMENT** |

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, and Rebecca S. Cohen, Assistant United States Attorney for said District, and Kristen Clarke, Assistant Attorney General, United States Department of Justice, Civil Rights Division, and Trial Attorney Christine M. Siscaretti, and Defendant Jason Stanley and Defendant's attorney, Peter Geisness, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure Rule 11(C)(1)(A) and (B).

    1.    **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to the following charges contained in the Indictment.

        a.    *Hate Crime*, as charged in Count 1, in violation of Title 18, United States Code, Section 249(a)(1); and,

Plea Agreement - 1
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. *False Statement*, as charged in Count 5, in violation of Title 18, United States Code, Section 1001.

By entering pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

    a.    <u>Count 1</u> - *Hate Crime*

First, the defendant willfully caused bodily injury, and,

Second, the defendant acted because of the actual or perceived race, color, religion, or national origin of any person.

    b.    <u>Count 5</u> - *False Statement*

First, the defendant made a false statement;

Second, the statement was made in a matter within the jurisdiction of a government agency;

Third, the defendant acted willfully with knowledge that the statement was untrue and that his conduct was unlawful; and,

Fourth, the statement was material to the activities or decision of the government agency.

3. **The Penalties**. Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

    a.    <u>Count 1</u> - *Hate Crime*

A maximum term of imprisonment of up to ten years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.

Plea Agreement - 2
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      b.     Count 5 - *False Statement*

A maximum term of imprisonment of up to five years, a fine of up to $250,000.00, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.00.

If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

Defendant understands that, if pleading guilty to a felony drug offense, Defendant will become ineligible for certain food stamp and Social Security benefits as directed by Title 21, United States Code, Section 862a.

Plea Agreement - 3
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of Defendant's peers;

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

   g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

Plea Agreement - 4
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

h. The right to appeal a finding of guilt or any pretrial rulings.

6. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

Plea Agreement - 5
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7. **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8. **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offenses. The statement of facts does not contain each and every fact known to the Defendant and to the United States concerning Defendant's involvement in or knowledge of the offenses.

### Count 1 – Hate Crime

a. On or about December 8, 2018, in Snohomish County, Washington, Defendant Jason Stanley willfully caused bodily injury to T.S., a black man, and aided and abetted other individuals in doing so, because of T.S.'s actual or perceived race. Stanley and other individuals also aided and abetted each other in willfully causing bodily injury to J.B. and A.D because of T.S.'s actual or perceived race.

b. At the time of the assault, Stanley was a prospective member of the Hammerskins, a white supremacist group that believed in the advancement and superiority of the white race, and that promoted racist beliefs and attitudes towards persons of color, including black persons.

c. Stanley knew that some members of the Hammerskins and/or Crew 38 used a tactic known as "mutual combat" against members of groups whose beliefs they opposed, such as Antifa and Black Lives Matter. According to this tactic, members believed that they could go to bars frequented by Antifa and Black Lives Matter supporters, and have one or more persons initiate a fight with Antifa and/or Black Lives Matter supporters. When the fight began, other members of the group could jump in and assault the Antifa/ Black Lives Matter supporters. When the police arrived, the members would claim a defense of "mutual combat."

d. On December 7, 2018, Stanley traveled to Lynnwood, Washington, with others for the purpose of attending events related to "Martyr's Day," an annual gathering

Plea Agreement - 6
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

honoring a white supremacist who died in a shootout with federal agents on Whidbey Island in the 1980s. On the evening of December 7, 2018, Stanley attended an informal gathering at the residence of a Hammerskins member located in Lynnwood, Washington. The gathering was also attended by other individuals who were members or prospective members of the Hammerskins or Crew 38, or who were aligned with the white supremacist beliefs of the Hammerskins and Crew 38.

   e. Late on the evening of December 7, 2018, Stanley and a group of more than ten other individuals from the gathering (hereinafter referred to as "Crew 38/Hammerskins group") went to a nearby bar and restaurant (hereinafter referred to as "the Lynnwood bar"). The Crew 38/Hammerskins group arrived at the Lynnwood bar shortly after midnight on December 8, 2018. The majority of the men in the Crew 38/Hammerskins group were similarly dressed in dark jeans or pants, black boots, black "bomber" jackets, dark-colored t-shirts, and had crew-cut hairstyles. Some wore jackets with either Crew 38 patches or other patches known to be aligned with white supremacist beliefs. Many of the shirts worn had phrases, numbers, or logos that expressed white supremacist beliefs and/or memberships, including Crew 38. Many in the group also had visible tattoos, including swastika tattoos, that expressed their views on white race superiority.

   f. When he walked into the bar, Stanley was wearing a t-shirt with a large "88" displayed on it, along with a "Crew 38" patch. The number "88" is a coded reference to the phrase "Heil Hitler." Stanley also had numerous tattoos that indicated his white supremacist beliefs. One such tattoo was a large one on his torso of Hitler, in Nazi uniform, holding a young boy's hand. The tattoo's caption read, "Teach our children well." Stanley had another tattoo proclaiming "White Pride" on his forearm, and one of three hooded Ku Klux Klan members with the words "The Original Boys in the Hood." Stanley had "14/88" – a combination of numbers representing the "Fourteen

Plea Agreement - 7
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Words" that guide some white supremacists and "Heil Hitler" – inked on one middle finger as well as across his chest. (The "Fourteen Words" that serve as a popular slogan for white supremacists are: "We must secure the existence of our people and a future for white children.") Stanley also had the numbers "23/16" – numbers representing the phrase "White Power" – tattooed on his other middle finger as well as on the backs of his calves.

    g.    While in the Lynnwood bar, the Crew 38/Hammerskins group went onto the dance floor and acted loudly and aggressively. T.S., a black man, was the disc jockey at the bar and he worked on his DJ equipment, playing music, on a small stage next to the dance floor. Stanley and other members of the group gave the Nazi salute multiple times while on the dance floor or while walking around the bar, in front of T.S. At one point, Stanley went up to the stage and began manipulating the DJ equipment without T.S.'s permission while T.S was outside taking a break. T.S. saw Stanley doing this, walked over to the stage and pushed Stanley in an attempt to get Stanley away from his equipment.

    h.    When T.S. put his hand on Stanley to move him away from his DJ equipment, numerous members of the Crew 38/Hammerskins group got on stage and surrounded T.S. Stanley and the Crew 38/Hammerskins group were angry because they believed T.S, a black man, was being disrespectful. Stanley knew that Crew 38 and Hammerskins members considered it disrespectful for a black man to touch a white man without permission, and for a black man to challenge conduct or acts by white men.

    i.    Another member of the Crew 38/Hammerskins group has admitted that as the group surrounded T.S., he said to T.S., "What are you doing, n---er?" T.S. told the group they had to leave. The member responded, "We're not going anywhere, n---er." More members of the Crew 38/Hammerskins group came on to the stage, and surrounded

Plea Agreement - 8
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

T.S. Multiple other members of the Crew 38/Hamerskins group also used racial slurs against T.S.

j. T.S. then cursed at the Crew 38/Hammerskins group. The same member of the group responded by calling T.S. a racial slur again, and punched T.S. in the face, knocking T.S. to the floor. Others in the Crew 38/Hammerskins group, including Stanley, also punched, kicked and/or stomped on T.S. with their boots.

k. During the assault, members of the Crew 38/Hammerskins group continued to yell racial slurs at T.S. Stanley knew and understood that the assault of T.S. by himself and others was because of T.S.'s race as a black man.

l. As a result of the assault, T.S. suffered serious bodily injuries, including but not limited to loss of consciousness, bleeding and swelling in his eye, bruising on his back, chest, and legs, and pain.

m. During the assault of T.S., two other men, J.B. and A.D., who were not associated with the Crew 38/Hammerskins group, attempted to intervene to help T.S. While doing so, J.B. and A.D. were also assaulted by members of the Crew 38/Hammerskins group. Specifically, both J.B. and A.D., both of whom are biracial, were punched and hit in the face, and both sustained injuries.

n. The assault of T.S., J.B., and A.D. ended when one of the Crew 38/Hammerskins members told the group to leave the Lynnwood bar. Stanley left the bar with several others, and they drove away. The following day, Stanley attended the "Martyr's Day" memorial service on Whidbey Island to honor Robert J. Mathews, the white supremacist who was fatally shot during a standoff with FBI agents.

### Count 5 – False Statements

o. On December 5, 2019, Stanley agreed to be interviewed by agents with the Federal Bureau of Investigation about the events of December 8, 2018. Stanley understood that he was under investigation for a potential federal hate crime offense.

Plea Agreement - 9
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

During his voluntary interview, Stanley falsely claimed to the agents that he was not present in Washington State during the weekend of December 8, 2018. This statement was false, in that Stanley was in Washington State during the weekend of December 8, 2018, when Stanley participated in the assault of T.S., J.B., and A.D. on December 8, 2018. Stanley made this false statement to the FBI because he wanted to cover up his participation in the assault. Further, information about who was present for and who participated in the assault was material to the FBI's investigation.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or Defendant at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

9. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provision apply to this case:

Count 1 – *Hate Crime*

a. Base Offense Level of 14 pursuant to Section 2H1(a)(1);

b. Serious Bodily Injury, five-level upward adjustment, pursuant to Section 2A2.2; and

c. Hate Crime Motivation, three-level upward adjustment, pursuant to Section 3A1.1.

Count 4 – *False Statements*

a. Base Offense Level 6, Section 2B1.1(a)(2).

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, that the Court is free to reject the Defendant's arguments regarding the Sentencing Guidelines, and that the Court is further free to apply

Plea Agreement - 10
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Agreed Recommendation Regarding Imprisonment.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties jointly agree to recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is a term of thirty-seven (37) months. The parties further agree to jointly recommend (1) that Defendant's sentence in this case be served concurrently with the term of imprisonment imposed by the District Court of the State of Idaho, in and for the County of Twin Falls, on January 21, 2009, in Case Number CR08-4619; and (2) that the Court recommend the Idaho State Correctional Center, at 14601 S. Pleasant Valley Road, Kuna, Idaho, as the place of confinement. Defendant understands that these recommendations are not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

Plea Agreement - 11
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12. **Restitution.** Defendant agrees that the Court can order Defendant to pay restitution to the victims of Defendant's crimes and, in exchange for the agreements by the United States contained in this plea agreement, Defendant agrees that restitution in this case should not be limited to the offenses of conviction. Defendant is aware that the United States will present evidence supporting an order of restitution for all losses caused by all of Defendant's criminal conduct known to the United States at the time of Defendant's guilty pleas to include those losses resulting from crimes not charged or admitted by Defendant in the Statement of Facts including bodily injury caused to T.S., J.B., and A.D. In exchange for the promises by the United States contained in this plea agreement, Defendant agrees that Defendant will be responsible for any order by the District Court requiring the payment of restitution for such losses.

a. The full amount of restitution shall be due and payable immediately on entry of judgment and shall be paid as quickly as possible. If the Court finds that the defendant is unable to make immediate restitution in full and sets a payment schedule as contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule represents a minimum payment obligation and does not preclude the government from pursuing any other means by which to satisfy the defendant's full and immediately-enforceable financial obligation, including, but not limited to, by pursuing assets that come to light only after the district court finds that the defendant is unable to make immediate restitution.

b. Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to cooperate fully with the United States' investigation identifying all property in which Defendant has an interest and with the United States' lawful efforts to enforce prompt payment of the financial obligations to be imposed in connection with this prosecution. Defendant's cooperation

Plea Agreement - 12
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

obligations are: (1) before sentencing, and no more than 30 days after executing this Plea Agreement, truthfully and completely executing a Financial Disclosure Statement provided by the United States Attorney's Office and signed under penalty of perjury regarding Defendant's and Defendant's spouse's financial circumstances and producing supporting documentation, including tax returns, as requested; (2) providing updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances; (3) authorizing the government to obtain Defendant's credit report before sentencing; (4) providing waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information; (5) authorizing the government to inspect and copy all financial documents and information held by the U.S. Probation Office; (6) submitting to an interview regarding Defendant's Financial Statement and supporting documents before sentencing (if requested by the government), and fully and truthfully answering questions during such; and (7) notifying the United States Attorney's Office before transferring any interest in property owned directly or indirectly by Defendant, including any interest held or owned in any other name, including all forms of business entities and trusts.

c. The parties acknowledge that voluntary payment of restitution prior to the adjudication of guilt is a factor the Court considers in determining whether Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a). In addition, in any event, the government will consider Defendant's cooperation regarding restitution in making its sentencing.

13. **Abandonment of Contraband**. Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

Plea Agreement - 13
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington and the Civil Rights Division of the Department of Justice agree not to prosecute Defendant for any additional offenses in connection with the conduct taking place on December 7-8, 2018 that gave rise to this investigation and that is known to the government at the time of this Plea Agreement based upon evidence in its possession at this time, and moves to dismiss the remaining counts in the Indictment against Defendant Stanley, specifically Counts 2 and 3, at the time of sentencing. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

15. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that, if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Plea Agreement - 14
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

16. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

 a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

Plea Agreement - 15
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.      Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

17.    **Voluntariness of Plea.** Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

18.    **Statute of Limitations.** In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

19.    **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Agreement binds the United States Attorney's Office for the Western District of

Plea Agreement - 16
*United States v. Jason Stanley*, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington and the Civil Rights Division of the U.S. Department of Justice. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 21st day of September, 2022.

_____
JASON STANLEY
Defendant

_____
PETER GEISNESS
Attorney for Defendant

_____
REBECCA S. COHEN
Assistant United States Attorney

_____
CHRISTINE M. SISCARETTI
Trial Attorney, Criminal Section
Civil Rights Division

Plea Agreement - 17
United States v. Jason Stanley, CR20-222-RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970